UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA


KIRK EDWARDS, *professionally known as*
DJ JMK

v.

TAKE FO' RECORDS, INC., ET AL.

CIVIL ACTION

NO. 19-12130

SECTION "F"


<u>ORDER AND REASONS</u>

Before the Court are three motions:  (1) a motion to dismiss
pursuant to Rule 12(b)(5) by Sony/ATV Music Publishing LLC
(improperly sued as Sony/ATV Allegro), Epic Records, a division of
Sony Music Entertainment (improperly sued as Epic Records), and
Quality Control Music, LLC; (2) a motion for reconsideration of
judgment by the plaintiff, Kirk Edwards (professionally known as
DJ JMK); and (3) a motion to dismiss pursuant to Rule 12(b)(6) by
Take Fo' Records, Inc., Take Fo' Publishing, Positive Black Talk,
Inc., Darwin Turner (professionally known as Choppa), and Earl
Mackie.  For the reasons that follow, the Rule 12(b)(5) motion to
dismiss is GRANTED in part and DENIED in part; the plaintiff's
motion for reconsideration is GRANTED in part and DENIED in part;
and the Rule 12(b)(6) motion to dismiss is DENIED.

**Background**

This copyright infringement lawsuit arises from a disc
jockey's claim that he recently registered the copyright to a song,

1

"Choppa Style," which he created some 20 years ago and that, now, more than 40 musical artists and record companies have used or sampled without his authorization in various recordings, including "Choppa Style," "Choppa Style Remix Feat. Master P," "Twerk Feat. Cardi B," "Oh Yeah Feat. French Montana," and "She a Winner Feat. City Girls."  The allegedly unauthorized use of the DJ's sound recording spawned this litigation against 47 defendants alleging copyright infringement as to all and breach of contract as to several.

Taken as true, these facts are drawn from the complaint.  As a disc jockey in New Orleans, Kirk Edwards is professionally known as "DJ JMK." In November 2000, Edwards authored a sound recording and musical composition entitled "Choppa Style Instrumental." Edwards began to play and promote this musical work as he worked as a DJ at the Platinum Club in New Orleans.

Darwin Turner is a New Orleans rapper and songwriter professionally known as "Choppa."  When Turner heard Edwards's "Choppa Style" instrumental being played in the Platinum Club, Turner asked Edwards if he could record lyrics to it; Edwards agreed.

During recording sessions at Edwards's studio, Edwards recorded these lyrics at the beginning of the song:  "JMK...mic check, one-two, one-two, this is DJ JMK from JMK Productions and On Fire Records...representing that 10th ward, STP, RIP...I got my

nigga Choppa Zhou 'bout to come up here and do his thing." Then, in the middle of the song, Edwards and Turner recorded this dialogue exchange: "Hold up DJ JMK (what)...I know you got that track (ah ha)...but I wanna know where all the independent ladies at (alrite)[.]" And at the end of the song: "just like that...my nigga Choppa Style, on fire records, JMK productions...summer 2001, it's goin' down just like that...check it out nigga...JMK."

After recording the lyrics to the instrumental, Edwards and Turner promoted the completed song, "Choppa Style," in various clubs in New Orleans. Edwards and Turner played the song for Earl Mackie, who owned Take Fo' Records, Inc.; they hoped the song would be included on an upcoming album entitled "Choppa Style" by Turner (Choppa). Take Fo' Records and Mackie contracted with Edwards to use his instrumental and sound recording with Choppa on Choppa's album in exchange for a flat fee, royalties, and a 30% bonus if Take Fo' Records secured a national distribution deal. The completed song, labeled "Choppa Style (JMK Remix) featuring DJ JMK," was included on the album.

The song became popular. Mackie and Take Fo' Records asked Edwards to create a radio-friendly version. Edwards did so; he removed the expletives and shortened the track by removing the dialogue exchange from the middle of the song. Both the radio-friendly version, entitled "Choppa Style (Radio) featuring DJ

JMK," along with the original version, were placed on Turner's album.

But Take Fo' Records failed to pay Edwards the agreed-upon royalties or 30% bonus. Take Fo' Records hired an in-house producer, William "Playa Will" Nelson to recreate Edwards's musical composition. Through Nelson, Take Fo' Records created another version of the song, this one also entitled "Choppa Style." This version was created without Edwards's permission and it misappropriated many of the recognizable and key protected elements of the Choppa Style instrumental. The infringing work, Choppa Style, misappropriates the instrumental's horn riff, arrangement, and melody. Take Fo' Records, through Nelson, used a piano to copy the horn melody and arrangement of Edwards' original version of the song. The infringing work was included as the second song on Turner's album named Choppa Style.

In 2003, Take Fo' Records and Mackie secured a national distribution deal for Turner as a result of Choppa Style. The deal was with Percy Miller (p/k/a Master P), No Limit Forever Records (owned by Miller), and Universal Records. Still no royalties or 30% bonus payment was tendered to Edwards, nor was Edwards consulted about the use of his instrumental and sound recording of Choppa Style. No Limit, Miller, and Universal hired Full Pack Productions to create yet another version of "Choppa Style" without Edwards's authorization. This version, which used

4

unauthorized sampling of Edwards's Choppa Style instrumental, Choppa Style (Radio), and Choppa Style (JMK Remix), was released as "Choppa Style Remix featuring Master P" and was included on Choppa's album, "Straight from the N.O.," recorded and produced by No Limit Records and Universal.  Edwards did not authorize the reproduction, distribution, public performance, or creation of the unauthorized derivative work.  The infringing work, "Choppa Style Remix featuring Master P," misappropriates key elements of Edwards's Choppa Style instrument, Choppa Style (radio), and Choppa Style (JMK Remix), including its horn rift and arrangement, drum pattern, and sequence.

In 2017, Mario Mims (professionally known as Yo Gotti) and Karim Kharbouch (professionally known as French Montana) released a sound recording entitled "Oh Yeah featuring French Montana," which misappropriated protected elements of Edwards's Choppa Style Instrumental, Choppa Style (Radio), and Choppa Style (JMK Remix), including the lyrics, combination horn riff, arrangement, and drum sequence.  Edwards did not authorize the reproduction, distribution, public performance, or creation of an unauthorized derivative work.

In 2018, Caresha Brownlee (professionally known as Yung Miami) and Jatavia Johnson (professionally known as JT), known collectively as City Girls, along with Belcalis Almanzar (professionally known as Cardi B), released a sound recording

entitled "Twerk Feat Cardi B" through Motown Records and Quality
Control Music, LLC. Edwards alleges that this recording
misappropriates many protected elements of his Choppa Style
Instrumental, Choppa Style (Radio), and Choppa Style (JMK Remix),
including the lyrics, melody, and drum sequence. Edwards says he
did not authorize their reproduction, distribution, public
performance of the sound recording or the creation of an
unauthorized derivative work.

In 2019, Mariel Semonte Orr (professionally known as Trouble)
released through Def Jam Recordings a sound recording entitled
"She a Winner featuring City Girls," which misappropriated
protected elements of Edwards's Choppa Style Instrumental, Choppa
Style (Radio), and Choppa Style (JMK Remix) including the melody,
combination horn riff, arrangement, and drum sequence. Edwards
did not authorize the reproduction, distribution, public
performance of the sound recording, or creation of an unauthorized
derivative work.

Edwards alleges that he is "[t]he sole creator and owner of
the copyright in the sound recording, musical composition of
'Choppa Style Instrument,' 'Choppa Style (JMK Remix) featuring DJ
JMK,' 'Choppa Style (Radio) featuring DJ JMK' and that his
"copyright of 'Choppa Style Instrumental' was registered with the
U.S. Copyright Office." It is alleged that defendants have
willfully copied and digitally sampled many protected elements of

Edwards's copywritten work and infringed upon the copyright by reproducing, distributing, publishing, displaying, and creating unauthorized derivative works.

On August 12, 2019, Kirk Edwards (DJ JMK) filed this copyright infringement lawsuit naming 47 defendants.[1]   Edwards seeks declaratory and injunctive relief, as well as compensatory, statutory, and punitive damages. Edwards alleges that his "Choppa Style Instrumental" was "wholly original" and registered with the U.S. Copyright Office, Registration Number SR839985.   Edwards fails to disclose in his complaint, but it is public record, that SR0000839985 is the registration number for "sound recording and music" called "Choppa Style" allegedly created in 2000 and authored by him, but the registration for the copyright is dated February 13, 2019, which is just six months before he filed this lawsuit. Edwards likewise fails to disclose that Darwin Turner and Earl Mackie registered with the U.S. Copyright Office "Choppa style/Choppa," which is a "sound recording" published by Take Fo' Records, created in 2001, published on July 20, 2001, and

---

[1] There are 47 defendants listed in the case caption.  It appears the plaintiff separately lists "only" 46 defendants in the paragraphs describing the defendants.  But, in paragraph 9, the plaintiff names Master P and says that Master P owns No Limit Forever Records, ostensibly a separate defendant (making 47, not 46 defendants).  In his first claim for relief, No Limit Forever Records is also listed as one of the defendants to which the group allegations contained in Count 1 apply.

registered on October 15, 2001 at registration number SR0000302440.[2]

In his first claim for relief, Edwards alleges copyright infringement by various defendants.[3] Edwards alleges that he is the sole creator and owner of the copyright for Choppa Style Instrumental, Choppa Style (JMK Remix) featuring DJ JMK, and Choppa Style (Radio) featuring DJ JMK; that the defendants listed in Count 1 have directly infringed his copyright by preparing unauthorized derivatives, reproducing copyrighted elements of his work; that the defendants have distributed copies of works that contain copyrighted elements of his work; that the defendants have published, displayed, sold, and licensed copies of works containing copyrighted elements of his works; and that the defendants have misappropriated key protected elements of his works into their infringing works including copying his works' horn rift and arrangement and drum pattern and sequence.

---

[2] It is undisputed that the Court may take judicial notice of these ostensibly competing copyright registrations contained in the public record.

[3] Edwards purports to repeat and reallege his prior allegations. He singles out these defendants under his "first claim for relief": Take Fo' Records, Take Fo' Publishing, Positive Black Talk, Inc., Darwin Turner, Earl Mackie, Percy Miller, No Limit Forever Records, L P Boyz Music, LLC, and Universal Records. In addition to the works already mentioned, Edwards alleges that some unspecified defendants have published, manufactured, distributed, sold, and licensed copies of "Thrift Shop."

In his second claim for relief, Edwards alleges that certain defendants have directly infringed his copyrights by preparing unauthorized derivatives in the form of "Twerk Feat. Cardi B"; reproducing copyrighted elements of his work; distributing copies of "Twerk Feat. Cardi B"; and publishing, displaying, selling, and licensing copies of "Twerk Feat. Cardi B," which contains copyrighted elements of Edwards's work.[4] Edwards alleges that the defendants sampled and copied his work, that the infringing work "Twerk Feat. Cardi B" misappropriates key elements including his work's lyrics, melody, and drum sequence, and that the defendants have published, manufactured, distributed, sold, and licensed copies of "Neon Cathedral."

In his third claim for relief, Edwards alleges that defendants[5] infringed his copyright by: preparing unauthorized

---

[4] The plaintiff purports to repeat and reallge his prior allegations; he lists these defendants in his second claim: Shaftizm, WB Music Corporation, Belcalis Almanzar (Cardi B), Richard Preston Butler (p/k/a Rico Love), Cecil Lamar Kirby, Klenord Raphael (p/k/a Shaft), Darwin Turner (p/k/a Choppa), Draft Day Records, LLC, Take Fo' Publishing, Warner-Tamerlane Publishing Corp., Quality Control, Motown, Caresha Brownlee, Jatavia Johnson, City Girl JT Music Publishing, EBE Music Group, Washpoppin, Inc., Yung Miami Music Publishing, Jorden Kyle Lanier Thorpe (p/k/a Pardison Fontaine), and Leonardo Underwood.

[5] These defendants are listed in Edwards's third claim: James Foye, III (p/k/a Keyzbaby), Karim Kharbouch (p/k/a French Montana), Darwin Turner (p/k/a Choppa), Christian Ward (p/k/a Yung Berg), Austin Owens (p/k/a AYO), Fresh is the Word, Money Mack Music, Take Fo' Publishing, Tenyor Music, The Upperclassmen Publishing, Artist World, Gotti World Publishing, Keyz Baby Productions, Montega Publishing, My Lord Prophet Music, Sony/ATV Allergo, Epic Records, Roc Nation, LLC, and Mario Mims (p/k/a Yo Gotti).

derivatives of his work in the form of "Oh Yeah Feat. French Montana"; reproducing copyrighted elements of his work in "Oh Yeah Feat. French Montana"; distributing copies of "Oh Yeah Feat. French Montana"; and publishing, displaying, selling, and licensing copies of "Oh Yeah Feat. French Montana."  The infringing work misappropriates key elements of the infringed work including its lyrics, combination horn riff, arrangement, and drum sequence.

In his fourth claim for relief, Edwards alleges that the defendants[6] infringed his work by preparing unauthorized derivatives of his work in the form of "She a Winner Feat. City Girls"; reproducing copyrighted elements of his work; distributing copies of "She a Winner Feat. City Girls," which contains copyrighted elements of his work; and publishing, displaying, selling, and licensing copies of "She a Winner Feat. City Girls," which misappropriates key elements of his work including its melody, combination horn riff arrangement, and drum sequence.

In his fifth claim for relief, Edwards alleges that four defendants, Take Fo' Records, Take Fo' Publishing, Positive Black Talk, Inc., and Earl Mackie, breached a contract with him by failing to pay him a fixed monetary amount as well as royalties

---

[6] Edwards names these defendants in his fourth claim: Def Jam Recordings, Mariel Orr, Caresha Brownlee (p/k/a Yung Miami), James Foye, III (p/k/a Keyzbaby), Jatavia Johnson (p/k/a JT), Austin Owens (p/k/a AYO), Turner, Christian Ward (p/k/a Yung Berg), and Miss Cathy's Son Music.

and a 30% bonus.  In his sixth and final claim for relief, Edwards
seeks a declaratory judgment as to all defendants that he is the
sole creator of the Choppa Style Instrumental (and Choppa Style
(JMK Remix) featuring DJ JMK, and Choppa Style (Radio) featuring
DJ JMK), which led to the highly popular Choppa Style sound
recording, which forms the basis of several commercially
successful rap/hip-hop songs.

When some 30 defendants still had not been served with
process, pursuant to Rule 4(m) of the Federal Rules of Civil
Procedure, on March 12, 2020, the Court issued a call docket,
ordering that "on or before April 13, 2020, the plaintiff shall
file into the record the return of service of process that has
been effected on" certain defendants, and admonished counsel that
"[f]ailure to do so will result, without further notice, in the
DISMISSAL of the unserved defendant[s]."  On April 6, 2020, the
plaintiff requested an extension of time to perfect service.  The
next day, the Court denied the request, noting:

> DENIED for lack of good cause: by the call docket
> deadline of April 13, 2020, the plaintiff has had 240
> days to effect service -- double the time provided by
> Rule 4(m) -- most of that time prior to the physical
> distancing restrictions mandated by the COVID-19
> pandemic. The plaintiff offers no reasonable basis for
> noncompliance with the already enlarged time to effect
> service.

See Order dtd. 4/7/20.  On April 13, 2020, counsel for the
plaintiff filed service returns into the record for 16 defendants,

ostensibly satisfying the April 13 call docket as to: No Limit
Forever Records, LP Boyz Music, LLC, Universal Records, Quality
Control Music LLC, Motown Records, City Girl JT Music Publishing
LLC, Yung Miami Music Publishing, Keyz Baby Productions, Sony/ATV
Allegro, Fresh is the Word, Tenyor Muisc, Upperclassmen
Publishing, and Epic Records.[7]  Because no service returns were
filed into the record as to the other defendants, the following
defendants were dismissed without prejudice for failure to
prosecute: Percy Miller, Mariel Semonte Orr, Belcalis Almanzar,
Caresha Brownlee, Jatavia Johnson, Jorden Kyle Lanier Thorpe,
Leonardo Underwood, EBE Music Group LLC, Washpoppin, Inc., James
Foye, III, Karim Kharbouch, Mario Mims, Austin Owens, Gotti World
Publishing, Montega Publishing, and Miss Cathy's Son Music.  On
April 29, 2020, the plaintiff was ordered to obtain a preliminary
default or responsive pleading as to certain defendants no later
than May 14, 2020; on May 27, 2020, the Court granted the
plaintiff's motion for entry of default as to No Limit Forever
Records, LP Boyz Music, LLC, Keyz Baby Productions, Fresh is the
Word, Tenyor Music, and Upperclassmen Publishing.[8]  On June 18,

---

[7] Curiously, the "proof of service" filed into the record by the
plaintiff as to each of these defendants indicates that service
was accomplished several months earlier in November 2019.
[8] On June 19, 2020, the Clerk's Office docketed a letter received
from CT Corporation; the letter dated June 8, 2020 states that CT
Corporation "was unable to forward" the summons directed to Fresh
is the Word because "Fresh is the Word is not listed on our records
or on the records of the State of C[alifornia]."  On June 25, 2020,

2020, finding that no answer or entry of default had been filed as to certain defendants, the Court dismissed without prejudice Universal Records and Motown Records.

Answers to the complaint have been filed by 17 defendants: Def Jam Recordings, Draft Day Records, LLC, Warner-Tamerlane Publishing Corp., Richard Preston Butler (p/k/a Rico Love), Cecil Lamar Kirby, Lenord Raphael (p/k/a Shaft), Shaftizm, WB Music Corporation, Christian Ward (p/k/a Yung Berg), Artist Publishing Group West, My Lord Prophet Music, Money Mack Music, Roc Nation LLC, UMG Recordings, Inc. (improperly sued as Universal Records), Capitol Music Group (improperly named as Motown Records), City Girl JT Music Publishing, LLC, Yung Miami Music Publishing, LLC (improperly sued as Yung Miami Music Publishing).

Five defendants -- Take Fo' Records, Inc., Take Fo' Publishing, Positive Black Talk, Inc., Darwin Turner p/k/a Choppa, and Earl Mackie -- now move to dismiss the plaintiff's claims as time-barred or for failure to state a claim upon which relief may be granted. Three defendants -- Sony/ATV Music Publishing LLC (improperly sued as "Sony/ATV Allegro"), Epic Records, a division of Sony Music Entertainment (improperly sued as Epic Records), and Quality Control Music, LLC -- move to dismiss for insufficient

---

the Clerk's Office docketed a letter from CT Corporation, in which CT Corporation indicated it had rejected service of process sent to it by the plaintiff by regular mail in the plaintiff's attempt to serve "Upperclassmen Publishing."

service of process.  And the plaintiff moves for reconsideration of this Court's orders dated April 7, 2020 and April 15, 2020.

I.

The Court first takes up the motions pertaining to service of process: three defendants challenge the sufficiency of service of process pursuant to Rule 12(b)(5) of the Federal Rules of Civil Procedure and, pursuant to Rule 59 or 60, the plaintiff seeks reconsideration of two orders concerning service: one, which dismissed certain defendants without prejudice (due to the plaintiff's failure to effect service); and, a second, which denied the plaintiff's request for additional time to perfect service.

*A.*

"Service of process, under longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." Murphy Bros., Inc. Michetti Pipe Stringing, Inc., 526 U.S. 344, 350 (1999).  "In the absence of service of process (or waiver of service by the defendant), a court ordinarily may not exercise power over a party the complaint names as defendant." Id. ("[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons....")(citation omitted); see also Aetna Bus. Credit v. Universal Decor, 635 F.2d 434, 435 (5th Cir. 1981)("In the absence of valid service of process, proceedings against a party are void.").

14

Federal Rule of Civil Procedure 4(c) governs service of process and obliges the plaintiff to serve the summons and complaint:

> A summons must be served with a copy of the complaint. The plaintiff is responsible for having the summons and complaint served within the time allowed by Rule 4(m) and must furnish the necessary copies to the person who makes service.

Fed. R. Civ. P. 4(c)(1). Rule 4(h) provides that a corporation may be served either "in the manner prescribed by Rule 4(e)(1) for serving an individual" or by "delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service or process...." Looking to Rule 4(e)(1), service may be achieved by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made." Louisiana's Long-Arm Statute applies to non-residents; it provides that service may be effected by sending a certified copy of the summons to the defendant by registered or certified mail, or actual delivery to the defendant by commercial carrier. See La.R.S. § 13:3204(A). If the summons and complaint are sent by mail, then there is some debate in the case literature concerning whether "the notice must be received by [the] defendant or by a person authorized to receive mail on his behalf[,]" Admins. Of Tulane Educ. Fund v. Ortego, 475 So. 2d 764, 764 (La. 1985)(per curiam),

15

or instead, whether there is no "actual delivery" requirement for service by mail, <u>Stogner v. Neilsen and Hiebert Sys., Inc.</u>, No. 07-4058, 2008 WL 4587304, at * (E.D. La. Oct. 15, 2008)(Vance, J.) (noting that the best reading of the <u>Ortego</u> assertion "is as an application of the developing rule that mail service must be addressed to an individual's residence rather than his place of business").   The text of the Long-Arm statute -- which distinguishes between service by certified mail (which must be "sent" to the defendant) and service by commercial carrier (which must be "actually delivered" to the defendant) -- favors <u>Stogner</u>'s reading. <u>See</u> La. R.S. § 3204(A)("a certified copy of the citation ... and of the petition ... shall be sent by counsel for the plaintiff ... to the defendant by registered or certified mail, or actually delivered to the defendant by commercial courier[.]").

Rule 4(m) provides the time limit for service:

> If a defendant is not served within 90 days after the complaint is filed, the court -- on motion or on its own after notice to the plaintiff -- **must** dismiss the action without prejudice against that defendant or order that service be made within a specified time.   But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Fed. R. Civ. P. 4(m)(emphasis added).

Rule 12(b)(4) of the Federal Rules of Civil Procedure allows a defendant to challenge the form of the process, rather than the method by which it is served.   By contrast, Federal Rule of Civil

16

Procedure 12(b)(5) allows a party to challenge insufficient service of process. Fed. R. Civ. P. 12(b)(5); 5B Charles Alan Right & Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE, § 1353 (3d ed. 2013)("Rule 12(b)(5) motion is the proper vehicle for challenging the mode of delivery or the lack of delivery of the summons and complaint."). Dismissal is appropriate under Rule 12(b)(5) if, for example, service of process is not accomplished in a timely manner or was not served in the appropriate manner.

"When service of process is challenged, the serving party bears the burden of proving its validity or good cause for failure to effect timely service." Systems Signs Supplies v. United States Dep't of Justice, 903 F.2d 1011, 1013 (5th Cir. 1990)(citations omitted); Thrasher v. City of Amarillo, 709 F.3d 509, 511 (5th Cir. 2013). District courts exercise "broad discretion in determining whether to dismiss an action for ineffective service of process." George v. United States Dep't of Labor, 788 F.2d 1115, 1116 (5th Cir. 1986). When a defendant challenges whether the plaintiff has complied with the time limit for service of process, the Court must first determine if the plaintiff can show good cause; if so, then the Court must extend the 90-day period for service. See Thompson v. Brown, 91 F.3d 20, 21 (5th Cir. 1996). If good cause is not shown, the Court may decide to dismiss the case without prejudice or extend the deadline for service. Id. To show good cause within the meaning of Rule 4(m), "some

showing of good faith ... and some reasonable basis for noncompliance within the time specified is normally required." See Thrasher v. City of Amarillo, 709 F.3d 509, 511 (5th Cir. 2013). Notably, "[p]roof of good cause requires 'at least as much as would be required to show excusable neglect[;] simple inadvertence or mistake of counsel or ignorance of the rules usually does not suffice." Id. (citation omitted). If the plaintiff fails to show good cause for its failure to effect timely service, dismissal without prejudice is warranted. See Thrasher, 709 F.3d at 511; Pugh v. Bank of Am., No. 16-14766, 2017 WL 1427015, at *3 (E.D. La. Apr. 21, 2017)(Milazzo, J.); Hunter v. Goodwill Indus., No. 05-2698, 2006 WL 1968860, at *2 (E.D. La. July 13, 2006)(Vance, J.).

*B.*

Three defendants (Sony/ATV Music Publishing LLC, Epic Records, a division of Sony Music Entertainment, and Quality Control Music, LLC) move to dismiss the complaint against them for insufficient service of process under Rule 12(b)(5) and pursuant to the Court's March 12, 2020 Order. The Court finds (and the defendants appear to concede) that the plaintiff has carried his burden to show that he sufficiently served Quality Control Music, LLC. By contrast, neither Sony/ATV Music Publishing LLC nor Epic Records, a division of Sony Music Entertainment, were sufficiently served. Additionally, the plaintiff has failed to effect timely

service on either defendant, despite ample time and notice of insufficient service; what's more, the plaintiff has failed (and continues to fail) to show good cause for the failure.

    1.    The plaintiff has met his burden to show that Quality Control Music, LLC was sufficiently served.

On April 13, 2020, the plaintiff filed a proof of service, in which he which claimed to have served Quality Control in November 2019.  Quality Control Music, LLC initially contends that service was insufficient because: (a) the address on the certified receipt is not Pierre Thomas's address; rather, it is a post office box at a UPS store; and (b) the signature on the certified receipt is not Pierre Thomas's, or anyone authorized to accept service on behalf of Quality Control.  The plaintiff counters that the annual registration filed with the Secretary of State for the State of Georgia lists the address for Quality Control's registered agent as 541 10th St. NW, Ste. 365, Atlanta, GA 30318, which is where the plaintiff effected service pursuant to the Louisiana Long-Arm statute by U.S. Certified Mail.  Although the defendants filed a reply paper on behalf of the other two defendants, they appear to abandon any request for dismissal of the claims against Quality Control, which thus appears to implicitly concede that service at the address listed for its registered agent suffices.  Because the plaintiff carried his burden to show that service was effected on Quality Control Music when the plaintiff sent a certified copy of

the summons to the defendant by certified mail to its registered agent in conformance with Louisiana and federal law, the motion to dismiss is denied in part as to Quality Control Music, LLC.[9]

> 2.   The plaintiff has failed to carry his burden to show that Sony/ATV Music Publishing LLC was sufficiently served and has failed to show good cause to excuse untimely service.

Sony/ATV Music Publishing LLC (SATV) moves to dismiss for insufficient service of process, noting that SATV's registered agent sent the plaintiff a Rejection of Service of Process letter dated November 26, 2019, indicating that service was rejected (and this rejection communicated to counsel for plaintiff) because "Sony/ATV Allegro" is not a legal entity, much less qualified to do business in the jurisdiction in which it is served.   SATV's registered agent confirms that the November 2019 attempt at service is the only attempt it received.   Thus, SATV submits, the plaintiff was put on actual notice in November 2019 that it had not properly served any Sony/ATV entity.   Filing knowingly insufficient "proofs of service" with the Court does not except SATV from dismissal pursuant to the Court's March 12, April 7, and April 14 Orders.

The plaintiff appears to concede that he did not serve SATV and that "Sony/ATV Allegro" is not a legal entity; the plaintiff does not dispute that he received the Rejection of Service of

---

[9] Why the plaintiff delayed so many months in filing the November 2019 proof of service remains a mystery.

Process letter from The Prentice-Hall Crop. Sys., Inc. (CSC). Nevertheless, the plaintiff simply concludes that service of process should be deemed sufficient because "Sony/ATV Allegro" is a division within Sony/ATV Music Publishing, LLC, which he allegedly served through CSC.  Notably, SATV received neither a copy of the summons and complaint nor a copy of the Rejection of Service letter sent to plaintiff's counsel until it requested a copy from CSC.  The plaintiff's submission that attempted service on a non-existent juridical entity is "good enough" must be rejected, especially where (as here) plaintiff's counsel was notified that service was rejected more than seven months ago. The plaintiff offers no explanation for his failure to correct an error of which he had actual notice months ago.

Because the plaintiff has failed to carry his burden to show he effected sufficient service on SATV, the defendants' motion to dismiss SATV for insufficient service of process must be granted. The plaintiff fails to offer any explanation for the invalid service; nor has he indicated that he has even attempted to perfect service on the correct entity despite having actual notice of the defect.

3.  The plaintiff has failed to carry his burden to show
    that Epic Records, a division of Sony Music
    Entertainment, was sufficiently served and has failed to
    show good cause to excuse untimely service.

Like SATV, Epic Records, a division of Sony Music
Entertainment, submits that service on it was similarly improper.
The proof of service purports to have served "Epic Records" by
serving an individual named "Koy Saechao" of CSC on November 18,
2019.  However, Epic points out that, like SATV, the registered
agent CSC sent the plaintiff a Rejection of Service of Process
letter dated November 19, 2019, indicating that it was not
authorized to accept service for the named entity; the Rejection
of Service listed a number of possible reasons.   Thus, Epic
submits, putting aside that there is no legal entity called "Epic
Records," the plaintiff was put on actual notice in November 2019
that it had not properly served Epic.   Filing knowingly
insufficient "proofs of service" with the Court should not have
excluded Epic from dismissal pursuant to the Court's March 12,
April 7, and April 14 orders.   The Court agrees.

The plaintiff argues that Epic Records is a division of Sony
Music Entertainment, which is a subsidiary of Sony Corporation of
America and, thus, service upon the registered agent for Sony
Corporation constitutes valid service upon "Epic Records."   The
plaintiff's willful ignorance of corporate formalities even after
receiving a Rejection of Service of Process notification from CSC

falls short of meeting the plaintiff's burden to show that
sufficient service was effected upon Epic Records, a Division of
Sony Music Entertainment.  The record indicates that Epic Records
is not an existing legal entity, and that the plaintiff has been
on notice that his attempted service was rejected in November 2019;
and yet the plaintiff still has failed to serve a proper legal
entity.  Because the plaintiff has failed to carry his burden to
show he effected service on Epic Records, a division of Sony Music
Entertainment, the defendants' motion to dismiss must be granted
in part and dismissal without prejudice as to Epic is warranted.

Accordingly, the defendant's Rule 12(b)(5) motion is granted
in part (as to SATV and Epic) and denied in part as to Quality
Control Music, LLC.


*C.*

With 47 named defendants in this lawsuit, the plaintiff's
lapses in service are not limited to the insufficiencies identified
by Sony/ATV Music Publishing LLC and Epic Records, a division of
Sony Music Entertainment.

Although he filed this lawsuit in August 2019, the plaintiff
waited almost the full 90-day time limit for service (until
November 8, 2019) even to file Requests for Summons as to all
defendants that had not waived service.  According to the docket
sheet, as of March 2020, most defendants had not been served,

prompting the Court to issue its March 12, 2020 order, which required that the plaintiff filed returns of service into the record by April 13, 2020 or face dismissal of unserved defendants. Three weeks later -- shortly before the extended deadline for service -- the plaintiff filed a motion requesting additional time to perfect service on these defendants and others.  The Court denied the motion on April 7, 2020, finding that the plaintiff offered "no reasonable basis for noncompliance with the already enlarged time to effect service."  On the April 13, 2020 deadline for doing so, the plaintiff filed some proofs of service (most of which indicated that service had been effected in November and December 2019).  As to those whom the plaintiff failed to file proofs of service, on April 14, 2020, the Court ordered dismissal without prejudice for failure to prosecute.  The plaintiff now submits that proofs of service as to eight specific defendants had been signed at the time of dismissal; but for some unidentified reason, the plaintiff waited another month to file the present motion for reconsideration, alleging to have timely effected service on those eight defendants.  Four of those eight defendants dispute timely (or sufficient) service and urge the Court to scrutinize the proffered proofs of service, which the plaintiff attached to his motion for reconsideration.

Due to his counsel's own delay or mistakes in attempting or effecting service, the plaintiff thus seeks relief from two Court

orders (incorrectly characterized as "judgments" by the plaintiff): (1) the plaintiff seeks reconsideration of this Court's April 7 order in which the Court denied for lack of good cause the plaintiff's request for an extension of time to serve some 30 unserved defendants; and (2) the plaintiff also seeks reconsideration of this Court's April 14 order in which it dismissed 16 defendants without prejudice for failure to prosecute because the plaintiff still had not filed proofs of service as to those 16; the plaintiff insists that he timely served 8 of those 16.   Among the dismissed defendants, Jatavia Johnson, Mariel Semonte Orr, Mario Mims, and Caresha Brownlee oppose the plaintiff's motion for reconsideration.

Invoking both Rule 59 and Rule 60, the plaintiff seeks reconsideration of the Court's April 7 and April 14 orders, claiming that service was effected on eight defendants (Austin Owens, Belcalis Almanzar, James Foye, III, Jatavia Johnson, Leonardo Underwood, Mariel Semonte Orr, Mario Mims, and Caresha Brownlee), "but the hired process server did not provide the executed summons returns prior to the [C]ourt's deadline of April 13, 2020[.]"   The plaintiff argues that reconsideration of the April 14 dismissal order is warranted to prevent manifest injustice due to the additional expenses he incurred in serving the defendants prior to the April 13 service deadline.   He argues that reconsideration of this Court's April 7 denial of extension of

time to serve is warranted because it is difficult to serve celebrity and public figure defendants because they hide assets or simply hide; and that the restrictions attendant to the COVID-19 pandemic have made it more difficult to serve celebrity defendants because they are not making public appearances.  Finally, he argues that filing a new lawsuit against the dismissed defendants will lead to multiple lawsuits involving infringement of the same song.

In opposing reconsideration of their dismissal, Jatavia Johnson, Mariel Semonte Orr, Mario Mims, and Caresha Brownlee point out that each was dismissed (without prejudice) from the case on April 14, 2020, eight months after the plaintiff filed suit.  In addition to the eight months that lapsed from institution of suit and the order dismissing unserved defendants, the plaintiff had 30 days' notice that dismissal was imminent if the plaintiff failed to file returns of service into the record.  Examining the documents attached to the plaintiff's motion, which purport to reflect service of process that allegedly occurred on April 14 or 15, the defendants submit that it is legally impossible (if not problematic from a professional responsibility standpoint) for a process server to swear to something (service on April 13, 2020) that has not yet happened (service being effected on April 14 or 15);[10] thus, the Court should disregard these "proofs" of service.

---

[10] Jatavia Johnson's declaration illustrates the contention; he states under penalty of perjury:

Even if the plaintiff had served and filed proofs of service by the Court's deadline, the defendants submit that service is still improper because "virtually all of the alleged 'residences' that Plaintiff used to attempt the untimely service upon" the defendants are not the defendants' actual residences.  Because the plaintiff failed to offer good cause in seeking an extension of time to effect service and likewise failed to comply with the deadline for filing proofs of service, the plaintiff cannot meet the stringent Rule 59 or Rule 60(b) standard for reconsideration.  Applying the less exacting procedural standard applicable to requests for reconsideration of interlocutory orders, the Court agrees that the plaintiff has failed to demonstrate that reconsideration of dismissal is warranted as to three out of the four defendants opposing the motion to reconsider; that is, the plaintiff's own submission demonstrates that three out of four of the opposing defendants were neither timely nor sufficiently served.

The Federal Rules of Civil Procedure do not expressly recognize motions for reconsideration.  Motions requesting

---

...
    2. I understand that Plaintiff filed a Proof of Service, dated April 13, 2020, that claims to have served me by mailing the summons and complaint to 401 NW 80th Street, Miami, Florida 33150 in the future – on April 14, 2020 – and by leaving copies of the summons and complaint at the same address on the same date.
    3. It is unclear how a process server could swear that he did something in the future, or how Plaintiff could file such a declaration with the Court. In any event, my residence is not located at 401 NW 80th Street, Miami Florida 33150.

reconsideration of Court orders are generally governed by Rule 54(b), Rule 59(e), or Rule 60(b). The Court considers motions for reconsideration challenging an interlocutory order under Rule 54(b) and -- depending on the timing of the motion -- the Court considers motions challenging a judgment as either a motion "to alter or amend" under Rule 59(e) or a motion for "relief from judgment" under Rule 60(b). See, e.g., Cabral v. Brennan, 853 F.3d 763, 766 (5th Cir. 2017)(district court's erroneous application of the "more exacting" Rule 59(e) standard to a motion seeking reconsideration of an order granting partial summary judgment -- an order that is interlocutory in nature -- was harmless error). Where, as here, the plaintiff seeks reconsideration of orders that adjudicate (without prejudice) fewer than all the claims among all of the parties, Rule 54(b) controls.

Rule 54(b) governs the plaintiff's motion to reconsider this Court's orders denying an extension of time to effect service on certain defendants and dismissing without prejudice certain defendants for lack of service.[11] Rule 54(b) authorizes the

---

[11] The plaintiff invokes Rules 59 and 60; however, Rules 59 and 60 apply to final judgments. When a party seeks to revise an order that adjudicates fewer than all the claims among all of the parties, then Rule 54(b) controls. The Court's April 7 and April 14 Orders operate to dismiss without prejudice certain defendants. These Orders are interlocutory in nature, rather than final judgments; thus, Rule 54(b) governs the plaintiff's motion for reconsideration.

district court to "revise[] at any time ... any order or other decision ... that does not end the action." Fed. R. Civ. P. 54(b); Austin v. Kroger Texas, L.P., 864 F.3d 326, 336 (5th Cir. 2017). The Court "is free to reconsider and reverse its decision for any reason it deems sufficient, even in the absence of new evidence or an intervening change in or clarification of the substantive law." Austin, 864 F.3d at 336 (citing Lavespere v. Niagara Mach. & Tool Works, Inc., 910 F.2d 167, 185 (5th Cir. 1990), *abrogated on other grounds*, Little v. Liquid Air Corp., 37 F.3d 1069, 1075 n.14 (5th Cir. 1994)(*en banc*)).   Compared to Rule 59(e), "Rule 54(b)'s approach to the interlocutory presentation of new arguments as the case evolves [is] more flexible, reflecting the 'inherent power of the rendering district court to afford such relief from interlocutory judgments as justice requires.'" Id. at 337 (quoting Cobell v. Jewell, 802 F.3d 12, 25-26 (D. C. Cir. 2015) (internal citations omitted) (quoting Greene v. Union Mutual Life Ins. Co. of Am., 764 F.2d 19, 22 (1st Cir. 1985)(Breyer, J.)).   Although a less exacting standard applies, courts look to similar considerations as those it considers when evaluating Rule 59(e) motions.[12]

---

[12] Rule 59(e) "serve[s] the narrow purpose of allowing a party to correct manifest errors of law or fact to present newly discovered evidence," and it is "an extraordinary remedy that should be used sparingly." Austin v. Kroger Texas, L.P., 864 F.3d 326, 336 (5th Cir. 2017)(quoting Templet v. HydroChem Inc., 367 F.3d 473, 479 (5th Cir. 2004)); Merritt Hawkins & Assocs. v. Gresham, 861 F.3d

Insofar as the plaintiff seeks reconsideration of the Court's April 7 Order denying him additional time to perfect service, the motion is denied. The plaintiff has failed even to attempt to belatedly show good cause. The plaintiff simply disagrees with the Court's order and laments the difficulty inherent in serving public figures (notwithstanding his ability to serve certain of the 47 defendants as evidenced by the number of defendants not challenging service of process) and the costs inherent in litigating a lawsuit against 47 defendants. The plaintiff fails to persuade the Court how he has diligently pursued service, or why he was (or is now) entitled to more time, in addition to the more than eight months that have passed since the lawsuit was filed. Intoning mistake and neglect falls short of good cause.

---

143, 157 (5th Cir. 2017) (quoting Waltman v. Int'l Paper Co., 875 F.2d 468, 473 (5th Cir. 1989)). Such motions "call[s] into question the correctness of a judgement." In re Transtexas Gas Corp., 303 F.3d 571, 581 (5th Cir. 2002). Because of the interest in finality, Rule 59(e) motions may only be granted if the moving party shows there was a mistake of law or fact or presents newly discovered evidence that could not have been discovered previously. Templet v. HydroChem Inc., 367 F.3d 473, 478-79 (5th Cir. 2004). Rule 59 motions should not be used to relitigate old matters, raise new arguments, or submit evidence that could have been presented earlier in the proceedings. See id. at 479; Rosenblatt v. United Way of Greater Houston, 607 F.3d 413, 419 (5th Cir. 2010)(citation omitted). The Court must balance two important judicial imperatives in deciding a motion for reconsideration: "(1) the need to bring the litigation to an end; and (2) the need to render just decisions on the basis of all the facts." Templet, 367 F.3d at 479.

Insofar as the plaintiff seeks reconsideration of the Court's April 14 Order dismissing certain defendants due to the plaintiff's failure to prosecute (failure to file proofs of service into the record), the request is granted in part and denied in part.  The plaintiff seeks reconsideration as to eight of the defendants dismissed without prejudice: Austin Owens, Belcalis Almanzar, James Fore, III, Jatavia Johnson, Leonardo Underwood, Mariel Semonte Orr, Mario Mims, and Caresha Brownlee.  As to five defendants for whom the plaintiff has presented facially valid/timely returns of service (Austin Owens, Belcalis Almanzar, James Foye, III, Leonardo Underwood, and Caresha Brownlee), the Court will reconsider their dismissal without prejudice because it appears that service was effected within the extended time period ordered by the Court (between April 11 and April 13), even if the returns of service were not promptly filed into the record prior to the enlarged deadline.

But the plaintiff's motion for reconsideration fails even the relatively permissive Rule 54(b) standard insofar as the Court's April 14 order dismissed without prejudice the plaintiff's claims against Jatavia Johnson, Mariel Semonte Orr, and Mario Mims.  To be sure, the Court "is free to reconsider and reverse its decision for any reason it deems sufficient, even in the absence of new evidence or an intervening change in or clarification of the substantive law."  Austin, 864 F.3d at 336 (citation omitted).

31

The plaintiff fails to persuade the Court to reconsider its April 14 Order as to these three defendants.  That the plaintiff offers what appear to be backdated proofs of service as to these defendants in an attempt to indicate compliance with the (enlarged) April 13 service deadline simply underscores the plaintiff's own neglect in even attempting service. Even if the Court considered the ostensibly backdated proofs of service as to these three defendants, the plaintiff offers no counterargument to these defendants' sworn submissions that the addresses listed as the locations for service are not, in fact, their true residences. The plaintiff fails to persuade this Court to reconsider its order dismissing without prejudice the claims against Johnson, Orr, and Mims.

The proofs of service on (and thus the order dismissing without prejudice) Caresha Brownlee, Austin Owens, Belcalis Almanzar, James Foye, III, and Leonardo Underwood warrant different treatment.  Although Caresha Brownlee opposes the motion for reconsideration, she does not contest that service appears to have been timely (and sufficiently) effected; she takes no issue with the timing of service, or the address listed on the service papers.  Likewise, the proofs of service for Austin Owens, Belcalis Almanzar, James Foye, III, and Leonardo Underwood appear facially valid and timely.  The Court will neither anticipate nor prejudge any defenses to service (or other defenses) these defendants might

advance; nevertheless, insofar as these defendants were ostensibly served before the extended service deadline and prior to the order dismissing them was issued, the plaintiff's motion for reconsideration is granted in limited part as to Brownlee, Owens, Almanzar, Foye, and Underwood.  Within five days of the issuance of this Order and Reasons, the plaintiff shall file the proofs of service into the record as to Caresha Brownlee, Austin Owens, Belcalis Almanzar, James Foye, III, and Leonardo Underwood; at that time, these defendants will be reinstated on the docket sheet and the plaintiff will be obliged to obtain an answer, responsive pleading, or default within 21 days.  If the plaintiff fails to file the returns of service into the record as to these defendants within five days, the defendants will be dismissed without further notice.

II.

*A.*

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows a party to move for dismissal of a complaint for failure to state a claim upon which relief can be granted. Such a motion is rarely granted because it is viewed with disfavor. See Lowrey v. Tex. A & M Univ. Sys., 117 F.3d 242, 247 (5th Cir. 1997)(quoting Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc., 677 F.2d 1045, 1050 (5th Cir. 1982)).

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009)(citing Fed. R. Civ. P. 8). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Id. at 678 (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

In considering a Rule 12(b)(6) motion, the Court "accept[s] all well-pleaded facts as true and view[s] all facts in the light most favorable to the plaintiff." See Thompson v. City of Waco, Texas, 764 F.3d 500, 502 (5th Cir. 2014) (citing Doe ex rel. Magee v. Covington Cnty. Sch. Dist. ex rel. Keys, 675 F.3d 849, 854 (5th Cir. 2012)(en banc)). But, in deciding whether dismissal is warranted, the Court will not accept as true legal conclusions. Id. at 502-03 (citing Iqbal, 556 U.S. at 678).

In considering Rule 12(b)(6) motions, the Court applies a factual plausibility standard: to survive dismissal, "'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" Gonzalez v. Kay, 577 F.3d 600, 603 (5th Cir. 2009)(quoting Iqbal, 556 U.S. at 678)(internal quotation marks omitted). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are

34

true (even if doubtful in fact)." Twombly, 550 U.S. at 555 (citations and footnote omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 ("The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."). The Court's task "is to determine whether the plaintiff stated a legally cognizable claim that is plausible, not to evaluate the plaintiff's likelihood of success." Thompson v. City of Waco, Texas, 764 F.3d 500, 503 (5th Cir. 2014)(citation omitted). This is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679. "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." Id. at 678 (internal quotations omitted) (citing Twombly, 550 U.S. at 557). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief'", thus, "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (alteration in original) (citation omitted).

"A statute of limitations may support dismissal under Rule 12(b)(6) where it is evident from the plaintiff's pleadings that the action is barred and the pleadings fail to raise some basis for tolling or the like." Jones v. Alcoa, Inc., 339 F.3d 359, 366 (5th Cir. 2003); see also 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1357 (3d ed. Dec. 13, 2019 update)("[T]he inclusion of dates in the complaint indicating that the action is untimely renders it subject to dismissal for failure to state a claim.").

*B.*

Take Fo' Records, Inc., Take Fo' Publishing, Positive Black Talk, Inc., Darwin Turner (p/k/a Choppa), and Earl Mackie move to dismiss the plaintiff's copyright infringement claims as well as his breach of contract claim; they contend that the claims are time-barred and that, even if his copyright infringement claims are not time-barred, the plaintiff fails to state a plausible claim. The briefing from both sides is poor; on the papers presented, the Court is not persuaded that dismissal at the pleadings stage is appropriate. The Court addresses each argument in turn.

1. The Copyright Act

Federal copyright protection attaches to "original works of authorship" including "musical works [and] sound recordings ...

36

fixed in any tangible medium of expression."  17 U.S.C. § 102(a).[13]
"An author gains 'exclusive rights' in [his] work immediately upon
the work's creation, including rights of reproduction,
distribution, and display."  Fourth Estate Public Benefit Corp. v.
Wall-Street.com, LLC, 139 S. Ct. 881, 887 (2019)(citing § 106 and
Eldred v. Ashcroft, 537 U.S. 186, 195 (2003))("[F]ederal copyright
protection ... run[s] from the work's creation.").[14]   For
copyrighted sound recordings, the copyright holder has the
exclusive right "to perform the copyrighted work publicly by means
of a digital audio transmission."  17 U.S.C. § 106(6).

Section 501(b) of the Copyright Act entitles a copyright owner
to institute a civil action for infringement of those exclusive
rights.  17 U.S.C. § 501(b); Wall-Street.com, LLC, 139 S. Ct. at
887.  Before pursuing a civil action in court, however, a copyright

---

[13] Under the Copyright Act, separate copyrights attach to a musical
work and a sound recording. Id. § 102(a)(2), (7).  The parties do
not address the distinction.  Nor do they address whether either
side contends that their registrations for their respective works,
18 years apart, are competing.

[14] To be sure, the owner's "exclusive rights" are not without
limitation.  Once a composition has been commercially recorded and
released to the general public the Copyright Act grants a
compulsory mechanical license.  See 17 U.S.C. § 115.  The license,
which Congress provides to encourage creativity and prevent
monopolization, "represent[s] a 'limited exception to the
copyright holder's exclusive right to decide who shall make use of
his [work].'"  Fox Television Stations, Inc. v. Aereokiller, LLC,
851 F.3d 1002, (9th Cir. 2017)(quoting Fame Pub. Co., Inc. v.
Alabama Custom Tape, Inc., 507 F.2d 667, 670 (5th Cir. 1975)).
Distinct from compulsory licenses, parties may, of course,
formulate their own negotiated licenses.

claimant must comply with the Act's registration requirement; that "registration of the copyright has been made[.]"  17 U.S.C. § 411(a); Wall-Street.com, LLC, 139 S. Ct. at 886-87 (observing that "although an owner's rights exist apart from registration, see §408(a), registration is akin to an administrative exhaustion requirement[,]" and further observing that "[u]pon registration of the copyright,...a copyright owner can recover for infringement that occurred both before and after registration.").  To state a claim for copyright infringement, the plaintiff must allege "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." Vallery v. American Girl, L.L.C., 697 Fed.Appx. 821, 823 (5th Cir. 2017)(unpublished, per curiam)(citing Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 361 (1991)).

A claim for copyright infringement must be filed within three years of the claim's accrual.  See 17 U.S.C. § 507(b)("No civil action shall be maintained under the provision of this title unless it is commenced within three years after the claim accrued."). Like other Circuits, the Fifth Circuit applies the discovery rule to determine accrual of claims for copyright infringement: claims for copyright infringement[15] accrue upon actual or constructive

---

[15] The parties do not address the distinction recognized in the case literature between copyright-ownership claims and copyright-infringement claims.  Yet, "claims of co-ownership, as distinct from claims of infringement, accrue when plain and express

discovery of the relevant infringement. See Graper v. Mid-Continent Cas. Co., 756 F.3d 388, 393 (5th Cir. 2014)(citing Jordan v. Sony BMG Music Entm't Inc., 354 Fed.Appx. 942, 945 (5th Cir. 2009)(quoting Pritchett v. Pound, 473 F.3d 217, 220 (5th Cir. 2006)(a copyright claim accrues "when [the party] knew or had reason to know of the injury upon which the claim is based.")).[16]

---

repudiation of co-ownership is communicated to the claimant, and are barred three years from the time of repudiation." Sanchez v. Hacienda Records and Recording Studio, Inc., 42 F. Supp. 3d 845, 851 (S.D. Tex. 2014)(quoting Zuill v. Shanahan, 80 F.3d 1366, 1369 (9th Cir. 1996)).   "Unlike copyright-infringement claims, a copyright-ownership claim 'accrues only once, and if an action is not brought within three years of accrual, it is forever barred.'" Id. (quoting Roger Miller Music, Inc. v. Sony/ATV Publ'g, LLC, 477 F.3d 383, 390 (6th Cir. 2007)).

[16] The Fifth Circuit applies the discovery rule to copyright infringement claims, notwithstanding the Supreme Court's express reservation of whether the discovery or injury rule applies to such claims. See Graper, 756 F.3d at 393 & n.5; see also Aspen Tech., Inc. v. M3 Tech., Inc., 569 Fed.Appx. 259, 264 (5th Cir. 2014).   "A claim ordinarily accrues 'when [a] plaintiff has a complete and present cause of action.'"   See Petrella v. Metro-Goldwyn-Mayer, Inc., 572 U.S. 663, 670 (2014).   "In other words," the Supreme Court explained, "the limitations period generally begins to run at the point when 'the plaintiff can file suit and obtain relief.'"   Id. at 670 n.4.  Although the Supreme Court went on to instruct that "[a] copyright claim thus arises or 'accrue[s]' when an infringing act occurs[,]" see id., whether the Copyright Act's statute of limitations is triggered by an infringing act (the injury rule) or discovery of the infringing act (the discovery rule) has not been expressly resolved by the Supreme Court.   See id. at n.4; see also SCA Hygiene Prods. Aktiebolag v. First Quality Baby Prods., LLC, 137 S. Ct. 954, 962 (2017)(explaining that it "specifically noted" in Petrella that it had "not passed on the question whether the Copyright Act's statute of limitations is governed by such a rule.").  The Court nevertheless observed that most if not all Circuit Courts of Appeals embrace application of the discovery rule to determine accrual of copyright infringement claims:

39

"Under the Copyright Act, '[r]ecordation of a document in the Copyright Office gives all persons constructive notice of the facts stated in the recorded documents.'" <u>Jordan v. Sony BMG Music Entertainment Inc.</u>, 354 Fed. Appx. 942, 945 (5th Cir. 2009)(citing 17 U.S.C. § 205(c) and <u>Daboub v. Gibbons</u>, 42 F.3d 285, 291 (5th Cir. 1995)). The recorded document must contain the information necessary to put the other party on notice. <u>Id.</u> (citations omitted).

Another consideration pertinent to determining when a copyright infringement claim is time-barred is that each infringing act accrues separately. See <u>Petrella</u>, 572 U.S. at 671 ("The separate-accrual rule attends the copyright statute of limitations."). Under the separate-accrual rule, the Supreme Court has instructed,

> when a defendant commits successive violations, the statute of limitations runs separately from each violation. Each time an infringing work is reproduced or distributed, the infringer commits a new wrong. Each wrong gives rise to a discrete "claim" that "accrue[s]"

---

Although we have not passed on the question, nine Courts of Appeals have adopted, as an alternative to the incident of injury rule, a "discovery rule," which starts the limitations period when "the plaintiff discovers, or with due diligence should have discovered, the injury that forms the basis of the claim." <u>William A. Graham Co. v. Haughey</u>, 568 F.3d 425, 433 (3d Cir. 2009). <u>See</u> <u>also</u> 6 W. Patry, Copyright § 20:19, p. 20-28 (2013)("The overwhelming majority of courts use the discovery rule in copyright cases."). <u>Petrella</u>, 572 U.S. at 670 n.4.

at the time the wrong occurs. In short, each infringing act starts a new limitations period.

Id. (citing Stone v. Williams, 970 F.2d 1043, 1049 (2d Cir. 1992)("Each act of infringement is a distinct harm giving rise to an independent claim for relief.").  "Separately accruing harm[,]" however, "should not be confused with harm from past violations that are continuing."  Petrella, 572 U.S. at 671 n. 6.[17]

### a.

First, the Court takes up the defendants' contention that the plaintiff's copyright infringement claims against them are time-barred.  The moving defendants (Take Fo' Records, Take Fo' Publishing, Positive Black Talk, Inc., Darwin Turner, and Earl Mackie) submit a detailed factual narrative in support of dismissal:

> On approximately April 18, 2000 defendant, Darwin Turner p/k/a Choppa, entered into a recording contract with defendant Take Fo' Records, Inc.  In approximately 2001, while under contract with Take Fo' records, defendants created an original recording of song entitled "Choppa Style". The song was written, arranged and mastered by Take Fo' Records and Darwin Turner p/k/a Choppa.
> In 2001 Darwin Turner released his debut album. The featured track on this album was the song Choppa Style.

---

[17] Separate accrual is only implicated where the central dispute is copyright infringement, not who owns the disputed work.  See, e.g., Roger Miller Music, Inc., 477 F.3d at 389-90 ("When claims for both infringement and ownership are alleged, the infringement claim is timely only if the corresponding ownership claim is also timely."); Sanchez, 42 F. Supp. 3d at 852 (predicting that the Fifth Circuit would decline to create a Circuit split by departing from Roger Miller and decisions by two other Circuits aligned in addressing disputes concerning ownership versus infringement).

The record was released locally and played regularly throughout the region. The song Choppa Style and the other songs on Mr. Turner's debut album were copyrighted and registered with the United States Patent Office. Specifically, the song Choppa Style was registered with the United States Copyright Office. Per the information in the United States Copyright Office, the song "Choppa Style" was recorded and published on October 15, 2011 by Take Fo' Records bearing Sound Recording Number SR0000302440.

In late 2001 or early 2002, defendants entered into a work for hire agreement with plaintiff, Kirk Edwards p/k/a DJ JMK, to produce a remix version of the song Choppa Style. There is no written contractual agreement; however the parties simply agreed upon an amount for Mr. Edwards' services and Mr. Edwards was paid that flat rate. There was no agreement regarding royalties or bonuses, etc.

In 2003 Take Fo' Records and Mr. Turner entered into a deal with No Limit Records and Universal Records. This deal secured a National Distribution agreement for Take Fo'/Darwin Turner allowing for his record to be distributed nationally. The deal was for approximately three years or until 2007. At the conclusion of this distribution deal with No Limit, no further use of the song was made by either side.

Based on this narrative, the defendants contend that the plaintiff's copyright infringement claims are facially time-barred. At this -- the pleadings -- stage, the Court is not persuaded. The plaintiff argues that "there are no facts to suggest when Defendant Take Fo' infringed upon the Plaintiff's composition nor does the complaint contain facts that the plaintiff had knowledge the infringing songs accumulated royalties, if when, or at all, through any of its infringing uses."[18]   The plaintiff

---

[18] Contrast defendants' assertion that "Mr. Edwards was ... fully aware of the use and release of his alleged musical creation known

also argues that "the defendants have continued to sell, distribute and license the infringing song, which has created continual damages." Viewing the allegations of the complaint in the light most favorable to the plaintiff, it is not evident that the plaintiff has pled himself out of Court.

Ordinarily, the statute of limitations is an affirmative defense raised in the answer. If the defense appears on the face of the complaint -- that is, if the plaintiff "affirmatively plead[s] himself out of court" -- dismissal under Rule 12(b)(6) may be appropriate. See Chicago Bldg. Design, P.C. v. Mongolian House, Inc., 770 F.3d 610, 613-14 (7th Cir. 2014)(citation omitted); see also EPCO Carbon Dioxide Prods., Inc., 467 F.3d 466, 470 (5th Cir. 2006)(Dismissal under Rule 12(b)(6) may be appropriate based on a successful affirmative defense, but the defense must appear on the face of the complaint.); Federal Deposit Ins. Corp. v. Dawson, 4 F.3d 1303, 1308 (5th Cir. 1993)("[R]aising the limitations defense in a motion to dismiss may easily be premature because facts tolling the running of the statute do not necessarily appear in the complaint.")(citation omitted).

This is not a case in which the plaintiff alleges specific dates that prove the defendants' statute of limitations defense.

---

as Choppa Style, yet no action was taken" within the three-year limitations period. It is not for the Court to resolve disputed facts at the pleadings stage.

To be sure, the dates alleged indicate that many of his claims against these defendants are stale. But the plaintiff offers only a rough timeline concerning his claims against the moving defendants.  The only concrete dates alleged concerning the moving defendants are that the plaintiff composed Choppa Style Instrumental almost 20 years ago, around 2000.  He does not allege specific dates relating to the defendants' alleged acts of infringement or his discovery of it.  He alleges that he collaborated with Turner to record lyrics, they shopped the song around, he entered into a distribution agreement with Take Fo' Records and Mackie, and the song was included on an album.  As the song became more popular, the plaintiff alleges that he and Turner recorded a radio friendly version, which was also included on the album.  There are no dates alleged concerning when the album was released or, more pertinent, when post-collaboration infringing acts occurred or when he discovered it.[19]

---

[19] The plaintiff alleges that his composition was infringed and placed on Turner's album "Choppa Style."  Although it is alleged that Take Fo' Records and Mackie secured a national distribution deal with Turner, Percy Miller, No Limit Records, and Universal Records "around 2003," there are no allegations regarding when the plaintiff discovered this deal or when the ostensibly later albums containing allegedly infringing works (such as the allegedly unauthorized derivative work "Choppa Style Remix featuring Master P") were released.  It certainly appears that the plaintiff's timeline as to his actual or constructive knowledge concerning these defendants' alleged infringement is deliberately vague.  Indeed, it may be that the plaintiff cannot prove any infringing acts by the moving defendants that are not time-barred.  Plaintiff's counsel is admonished to avoid unduly multiplying

Considering only the particular arguments advanced in favor of dismissal, the complaint is sufficient to survive a Rule 12(b)(6) challenge based on a statute of limitations defense. The plaintiff does not allege when he discovered the infringement for the purposes of determining accrual; from the facts alleged, the reasonable inference to draw in his favor is that the defendants copied his song and continued to use or distribute it long after Edwards collaborated with Choppa and the other moving defendants. Although the plaintiff alleges some facts that cast doubt on his ability to recover against the moving defendants for certain allegedly infringing acts occurring in the early 2000s, the plaintiff has not affirmatively pled himself out of Court. Twombly, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (**even if doubtful in fact**).")(emphasis added); Iqbal, 556 U.S. at 678 ("The plausibility standard is not akin to a 'probability requirement'[.]").

In considering whether dismissal is appropriate, the Court's task is hindered by the defendants' singular focus on their own factual narrative. The defendants' submission previews their statute of limitations defense along with other defenses. However,

---

proceedings; the Court will not hesitate to consider sanctions for such conduct. See 28 U.S.C. § 1927.

the narrative's source is not the complaint's allegations, which is the focal point for a Rule 12(b)(6) motion.  Anchored as it is to purported facts absent from the plaintiff's complaint, the defendants fail to persuade the Court that the plaintiff's copyright infringement claims are facially time-barred.[20]

b.

Having concluded that the plaintiff's copyright infringement claims are not facially barred by the statute of limitations, the Court considers whether the copyright infringement claims against the moving defendants must be dismissed for failure to state a plausible claim.

To state a claim for copyright infringement, the plaintiff must allege "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." Vallery v. American Girl, L.L.C., 697 Fed.Appx. 821, 823 (5th Cir. 2017)(unpublished, per curiam)(citing Feist Publ'ns, Inc. v. Rural

---

[20] Again, there are few facts alleged to suggest when the alleged infringement began and the plaintiff alleges facts indicating the infringement continues.  That specific acts of infringement occurred within the limitations period is not "foreclosed by the allegations of the complaint."  See Jaso v. The Coca Cola Co., 435 Fed.Appx. 346, 353 (5th Cir. 2011)(unpublished, per curiam) (citations omitted).  This is especially so considering the separate-accrual rule; each allegedly infringing act accrues separately.  The plaintiff's open-ended allegations regarding timing and discovery of infringing acts coupled with the defendants' singular focus on facts outside of the complaint renders dismissal based on the defendants' statute of limitations defense inappropriate.

<u>Tel. Serv. Co.</u>, 499 U.S. 340, 361 (1991)).  There can be no dispute that the plaintiff pleads facts indicating that he owns a valid copyright in Choppa Style and that he alleges that each of the defendants copied his song or musical composition without authorization.

The defendants' argument in support of dismissal is difficult to follow, and they invoke no pertinent law.  They appear to take issue with the timing and validity of the plaintiff's copyright registration; again, they improperly allude to the merits of the plaintiff's claim (or of their defenses):

> [A]pproximately eighteen (18) years after the song "Choppa Style" was composed, recorded and copyrighted by Take Fo' Records/Darwin Turner, Mr. Kirk Edwards filed a sound recording and music copyright with the United States Copyright office for the Song "Choppa Style." Mr. Edwards' copyright is recorded with the Copyright Office under number SR0000839985.  By statute, if Mr. Edwards [sic] filing/recordation is deemed sufficient, his claim/right to assert a claim for violation of his copy right would not be valid or enforceable until after February 2019. Accordingly, Mr. Edwards clearly did not have a right to assert a claim for copyright infringe [sic] against these defendants in 2001, and given the foregoing he does not have a right of action against these defendants now.
> It can only be assumed that Mr. Edwards has asserted this claim because of the re-emergence of the song "Choppa Style". Specifically, last year (2018) the song "Choppa Style" became the "unofficial" song of the New Orleans Saints football organization.

The defendants fail to persuade the Court that the plaintiff states no plausible copyright infringement claim.  To be sure, recordation is a prerequisite to file a lawsuit claiming copyright

infringement, but the defendants do not dispute that the plaintiff claims (indeed, they admit) that he registered his copyright for "Choppa Style" prior to filing this lawsuit.  Insofar as the defendants challenge the timing of the plaintiff's recent copyright recordation, the defendants offer no legal support for their insinuation that the plaintiff's claim fails as a matter of law because the defendants first had a copyright in 2001 for what the Court is asked to presume is the same sound recording.[21]  The Court is left to speculate as to the grounds the defendants advocate for dismissal.  If validity is tethered to timing and

---

[21] For example, the defendants do not invoke let alone mention 17 U.S.C. § 410(c), which provides:

> (c) In any judicial proceedings the certificate of registration made before or within five years after first publication of the work shall constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate. The evidentiary weight to be accorded the certificate of a registration made thereafter shall be within the discretion of the court.

Consideration of this statutory provision is yet another indication that the defendants' challenge to the validity of the plaintiff's (presumably?) competing copyright is more appropriately considered at the merits, not pleadings, stage. Additionally, as the Supreme Court has observed, "[u]pon registration of the copyright,...a copyright owner can recover for infringement that occurred both before and after registration." Fourth Estate Public Benefit Corp. v. Wall-Street.com, LLC, 139 S. Ct. 881, 886-87 (2019).  However, the belated registration of the plaintiff's copyright may impact the plaintiff's remedies: the plaintiff's ability to recover statutory damages or attorney's fees is limited to only those instances of infringement that occur after registration.  See 17 U.S.C. § 412.  The defendants' papers fail to appreciate the implications of many of the legal intricacies of copyright law; they fail to persuade the Court that they are entitled to any relief at this time.

exclusivity, as the defendants vaguely suggest (and clearly fail to brief), such are findings that will be made on the record, not on the pleadings.  See 17 U.S.C. § 410; see also Gen. Universal Sys., Inc. v. Lee, 379 F.3d 131, 141 (5th Cir. 2004)("A certificate of registration, if timely obtained, is prima facie evidence both that a copyright is valid and that the registrant owns the copyright.").  Defendants' submission into the record of a recording contract between Take Fo' and Choppa -- a contract, which defendants suggest demonstrates Take Fo's exclusive ownership rights to "Choppa Style" -- fails to persuade the Court that dismissal of the plaintiff's *copyright infringement* claims are warranted.  At this stage, Edwards need only allege, not prove, that (1) he owns a valid copyright in "Choppa Style"; and (2) the defendants copied protected aspects of the work.  The defendants do not challenge sufficiency of the allegations pertaining to the second element; and their limp and unsupported arguments as to the first element fail to persuade the Court that dismissal of the plaintiff's copyright infringement claims is warranted.

  2.  State-Law Breach of Contract

  The defendants move to dismiss the plaintiff's breach of contract claim under Louisiana law on the ground that any such claim is prescribed by the applicable limitations period.  Like the briefing on the infringement claims, the briefing on the breach of contract claim is inadequate; the defendants fail to demonstrate

that dismissal at the pleadings stage on their prescription defense is warranted.

"Unless otherwise provided by legislation," Louisiana Civil Code article 3499 provides, "a personal action is subject to a liberative prescription of ten years." The Civil Code identifies some exceptions to this general provision; for example, a three-year prescriptive period applies to "[a]n action for the recovery of compensation for services rendered, including payment of salaries, wages, commissions, [and] professional fees . . . ." La. Civ. Code art. 3494.

Whether the 10-year prescriptive period of Louisiana Civil Code article 3499 or the three-year prescriptive period of Louisiana Civil Code article 3494 applies to the breach of contract claim because it pertains to professional services, the defendants contend, the plaintiff's breach of contract claim is time-barred. On the one hand, the defendants "deny" that any contract was ever eexecuted and at another point in the briefing the defendants "admit" that the defendants and Edwards agreed that Edwards would be paid a flat rate for his services (to produce a remix version of the song, Choppa Style), but they "deny" that they agreed to pay Edwards royalties or bonuses. Again, by advocating their version of the facts (including the terms of a contract that they dispute exists), the defendants' arguments ignore the applicable

pleading standards.  The factual disputes they present must await summary judgment.

To determine which prescriptive period applies, the Court must be able to classify the sort of obligation alleged.  But the defendants focus on disputes of fact.  The Court declines to advise which prescriptive period might apply to the alleged facts on this briefing.[22]  Suffice to say, it is not evident from the face of the complaint that the plaintiff's breach of contract claim is time-barred.  For example, insofar as the plaintiff alleges that the defendants breached their obligation to pay royalty payments, no dates are alleged that would allow the Court to determine accrual, nor are the royalty agreement's particular terms alleged, or of record.[23]  By denying the existence of the alleged royalty obligation, the defendants simply conclude that the plaintiff alleges a breach of a professional services agreement that must have prescribed more than three years ago.  But the defendants cannot succeed on their prescription defense at the pleadings stage

---

[22] Insofar as the plaintiff attempts to invoke the continuing *tort* doctrine to toll the prescriptive period for his breach of contract claim, any such argument fails as a matter of law.

[23] They also fail to acknowledge the law governing separate obligations, or that each royalty payment might be a separate obligation with its own prescriptive period commencing when that specific royalty payment became due.  Cf. Hockerson-Halberstadt, Inc. v. Saucony, Inc., No. 91-1720, 2004 WL 2998567, at * (E.D La. Dec. 23, 2004)(Fallon, J.)(each royalty payment has its own ten-year prescriptive period that commenced when that payment became due thirty days after the end of the applicable quarter).

when facts critical to its resolution are not alleged in the complaint.

Deliberately or not, the plaintiff does not allege the specific terms of the parties' alleged contract, or the date(s) concerning the defendants' alleged royalty obligation and breach; the alleged facts thus do not support the defendant's prescription defense as a matter of law.  Accordingly, the defendants fail to persuade the Court that the plaintiff's breach of contract claim must be dismissed as prescribed.[24]

***

Accordingly, for the foregoing reasons,

IT IS ORDERED: that the motion to dismiss pursuant to Rule 12(b)(5) by Sony/ATV Music Publishing LLC (improperly sued as Sony/ATV Allegro), Epic Records, a division of Sony Music Entertainment (improperly sued as Epic Records), and Quality Control Music, LLC is GRANTED in part (the plaintiff's claims against "Sony/ATV Allegro" and Epic Records are dismissed without

---

[24] It does not appear that the defendants seek dismissal of the breach of contract claim for failure to state a claim.  If their motion can be read to seek such relief, it is denied.  The defendants' focus on factual controversies demonstrates that they do not challenge technical pleading deficiencies, but, rather, quarrel over disputed facts, which cannot be resolved on the pleadings.

prejudice) and DENIED in part (as to the plaintiff's claims against Quality Control Music, LLC).

IT IS FURTHER ORDERED: that the plaintiff's motion for reconsideration of judgment or to alter or amend judgment, construed as a Rule 54(b) motion, is GRANTED in part (insofar as the plaintiff seeks reconsideration of the Court's April 14 Order dismissing without prejudice his claims against Caresha Brownlee, Austin Owens, Belcalis Almanzar, James Foye, III, and Leonardo Underwood) and DENIED in part (insofar as the plaintiff seeks reconsideration of the Court's April 7 Order and insofar as the plaintiff seeks reconsideration of the April 14 Order dismissing without prejudice his claims against Jatavia Johnson, Mariel Semonte Orr, and Mario Mims).

IT IS FURTHER ORDERED: that, within five days of the issuance of this Order and Reasons, the plaintiff shall file the proofs of service into the record as to Caresha Brownlee, Austin Owens, Belcalis Almanzar, James Foye, III, and Leonardo Underwood; at that time, these defendants shall be reinstated and the plaintiff shall obtain an answer, responsive pleading, or preliminary default within 21 days.  If the plaintiff fails to file the returns of service into the record as to these defendants within five days, the defendants will be dismissed **without further notice**.

And, finally, IT IS FURTHER ORDERED: that the motion to dismiss pursuant to Rule 12(b)(6) by Take Fo' Records, Inc., Take

Fo' Publishing, Positive Black Talk, Inc., Darwin Turner (professionally known as Choppa), and Earl Mackie is DENIED.

New Orleans, Louisiana, July 7, 2020

MARTIN L. C. FELDMAN
UNITED STATES DISTRICT JUDGE